UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR 31 P 1:40
U.S. DISTRICT COURT
HARTFORD, CT.

STEPHEN N. PARSONS,

    Plaintiff,

v.

    No. 3:00CV1519(DJS)

TOWN OF WATERTOWN, THOMAS
KOLATSKY and RONALD LUTH in
their individual and official
capacities,

    Defendants.

### MEMORANDUM OF DECISION

Plaintiff Stephen Parsons brings this action against defendants the Town of Watertown, Thomas Kolatsky, and Ronald Luth based upon the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Parsons alleges that defendants violated his rights under the Fourth Amendment, and Connecticut state law, by arresting him without probable cause. Defendants have filed a motion for summary judgment (dkt. # 26), which has been renewed (dkt. # 45) following a stay of this action. For the reasons set forth herein, defendants' motion is **GRANTED**.

### I. FACTS

Parsons was employed at the United Parcel Service ("UPS") in Watertown, Connecticut. Apparently, Parsons held several positions with the UPS from August 3, 1989 through August 20, 1998. During the time period pertinent to this lawsuit, Parsons

held the position of Security Supervisor at the Watertown facility until July 31, 1998, when he was re-assigned to the Stratford facility as a Pre-Load Supervisor. The UPS terminated Parsons's employment on August 20, 1998. Kolatsky was, at all pertinent times, a detective for the Town of Watertown Police Department ("Department"). Luth was a sergeant in the Department, and supervised Kolatsky's work at issue in this case.

Parsons's claims relate to the suspected theft of a package containing a diamond ring valued at $40,000 ("the package"), which did not arrive at its intended destination in Avon, Connecticut after being shipped from a jeweler in New York City on July 16, 1998. On or about July 24, 1998, Parsons, in accordance with his duties at the time, began to investigate the disappearance of the package. According to Parsons, his investigation was never actually completed, but he suspected that the package in question had never arrived at the Watertown facility.

On July 30, 1998, before the conclusion of Parsons's investigation, the UPS transferred Parsons to the Stratford facility and changed his position to a Pre-Load Supervisor. Parsons. William Hardnock, District Security Manager and Parsons's supervisor, informed Parsons that Peter Hines, Security Manager and Parsons's immediate supervisor, had reported to Hardnock that Parsons had been performing his job poorly, and

that the transfer and new assignment were a result of Parsons's poor performance. Parsons claims to have stated to Hardnock that he intended to file an internal UPS grievance alleging that the transfer and new assignment was the result of age discrimination. Parsons was eventually terminated on August 20, 1998 after Parsons refused to admit to another supervisor, Pat Carmody, that Parsons had stolen the package.

Prior to October 8, 1998, Hines and Hardnock assumed control of the UPS internal investigation regarding the suspected theft of the package. The UPS investigation identified Parsons as the likely perpetrator of the theft of the package. Generally, speaking, if a package to be shipped by UPS is declared or known to be valuable, as the package at issue in this case was, UPS takes certain precautions. At the Watertown facility, a "high-value clerk" would arrive for work before the majority of the delivery crew and would check for notification from other UPS offices of the arrival of high-value packages. This employee would then locate the high-value packages on the loading dock and secure them in a mobile locker. The employee would then generate a list, copied to each route supervisor, that each driver would sign when he or she removed the high-value package for delivery. The high-value clerk would then file the paperwork once the packages had been dispersed for delivery. Parsons, as a security officer, had access to the loading dock, the mobile locker, and

the filing cabinet where the high-value records were stored.

The investigation revealed the following. The list of high-value packages for July 17, 1998 was not located. Also, the notices of the arrival of high-value packages from the other UPS offices were located by Parsons well after July 17, 1998. The high-value clerk on duty on July 17, 1998 stated that she witnessed Parsons remove a package from the mobile locker that closely resembled a model package obtained from the jeweler. The Avon route driver stated that he was aware of a high-value package for his route, but that he forgot to retrieve the package from the high-value clerk. He stated that his supervisor was supposed to bring the package to him along his route, but that his supervisor never brought the package to him. The last UPS office that scanned the package into the computer tracking system was Stratford at 2:07 a.m. on July 17, 1998, but the tracking records reflect an attempted delivery of the package by the Watertown office at 4:40 p.m. The notation on the tracking system reflecting the attempted delivery was phoned in from the Watertown UPS facility on July 17, 1998 at 5:16 p.m., and the intended recipients of the package denied that an attempt to deliver was ever made. Hines and Hardnock concluded that Parsons had knowledge of and access to the package, access to the phone in the facility used to phone in the attempted delivery, and the knowledge and ability to alter or destroy records regarding the

package.  Upon completing their internal investigation, Hines and Hardnock forwarded their investigative file to Kolatsky, and requested that the Department investigate and issue an arrest warrant for Parsons.

Kolatsky then commenced an investigation that led to Parsons's arrest.  Kolatsky interviewed Parsons as part of his investigation on November 2, 1998.  Kolatsky also visited the UPS Watertown facility on November 11, 1998, and interviewed a witness who had provided a sworn statement to Hines and Hardnock. On December 2, 1998, a judge of the Connecticut Superior Court issued an arrest warrant for Parsons, upon an application drafted by Kolatsky, on a charge of larceny in the first degree.  Parsons turned himself in and was arrested that same day.  On August 24, 1999, Parsons was tried on this charge and acquitted.

## II. DISCUSSION

Parsons brings this action pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.  The Amended Complaint sets forth the following claims: (1) arrest without probable cause in violation of the Fourth Amendment; and (2) false arrest in violation of state law.[1]  Defendants argue that Parsons cannot, as a matter of law, prevail on his claims against them because (1) there was probable cause to arrest Parsons; and (2) even if there was not probable cause to arrest Parsons, Kolatsky and Luth

---

[1] Parsons has withdrawn all other claims.

-5-

should be entitled to qualified immunity.

## A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to

the import of the evidence is summary judgment proper." Id.

## B. PROBABLE CAUSE

In order for Parsons to prevail on either of his two claims, he must demonstrate that he was arrested without probable cause.[2] Under the Fourth Amendment, an individual has the right to be free from unreasonable seizures, including the right to not be arrested without probable cause. See Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002). "The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate. . . ." Franks v. Delaware, 483 U.S. 154, 165 (1978). Because Parsons was arrested pursuant to a warrant issued by a judicial officer, there is a presumption that probable cause exited for his arrest. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). The Supreme Court has held that this presumption is not without limitation:

> where . . . a substantial preliminary showing [is made]
> that a false statement knowingly and intentionally, or
> with reckless disregard for the truth, was included by
> the affiant in the warrant affidavit, and if the
> allegedly false statement is necessary to the finding
> of probable cause, the Fourth Amendment requires that a
> hearing be held. . . . In the event that at that
> hearing the allegation of perjury or reckless disregard
> is established . . . by a preponderance of the
> evidence, and, with the affidavit's false material set
> to one side, the affidavit's remaining content is
> insufficient to establish probable cause, the search

---

[2] The parties agree that the standard for deciding Parsons's remaining state and federal claims is identical.

-7-

>    warrant must be voided and the fruits of the search
>    excluded to the same extent as if probable cause was
>    lacking on the face of the affidavit.

Franks, 438 U.S. at 155-56. Thus, the presumption of validity attendant to an arrest pursuant to a warrant may be rebutted by showing that the affidavit in support of the warrant contained inaccuracies or omissions if "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." U.S. v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." U.S. v. Awadallah, 349 F.3d 42, 65 (2d Cir. 2003) (internal quotation marks omitted).

Parsons alleges that the warrant application drafted by Kolatsky and presented to the judicial officer omitted critical information, which is indicative of Kolatsky's reckless disregard for the truth of the statements in the warrant. "Material omissions from an affidavit are governed by the same rules as false statements." U.S. v. Campino, 890 F.2d 588, 592 (2d Cir. 1989). Reckless disregard for the truth of statements set forth in the warrant "may be inferred where the omitted information was 'clearly critical' to the probable cause determination." Rivera

v. U.S., 928 F.2d 592, 604 (2d Cir. 1991). However, "the mere intent to exclude information is insufficient" to satisfy the test set forth in Franks; in contrast, "'Franks protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate.'" U.S. v. Awadallah, 349 F.3d 42, 68 (2d Cir. 2003) (quoting United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir.1990)) (emphasis in original).

Parsons argues that the affidavit in support of the warrant issued for his arrest suffered from the following infirmities: (1) that Paragraph 5 incorrectly indicated "confirmed arrival [of the package] in the Watertown UPS facility on 07/17/98," (dkt. # 28, Ex. D ¶ 5); (2) that Paragraph 29 is a misleading and incomplete account of Kolatsky's interview with Parsons because, among other things, Kolatsky omitted specific reference to Hines being biased against Parsons; and (3) that Kolatsky relied upon erroneous and inconsistent information set forth in the UPS investigative report. Resolving Parsons's challenge to Kolatsky's affidavit is a two-step process. First, the court must correct and false statements and supply any omitted material from the affidavit. See Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999). Second, the court must review the "corrected" affidavit and determine whether, as a matter of law, probable cause remains. See id. Probable cause is "a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability" that the person identified has committed the alleged crime. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Parsons's criticism of the arrest warrant application does not give rise to an inference that Kolatsky recklessly disregarded the truth when seeking an arrest warrant because the inaccuracies in the warrant are not material to determining probable cause to arrest Parsons. The first claimed inaccuracy, the "confirmed arrival [of the package] in the Watertown UPS facility on 07/17/98," is not false and does not suffer from a material omission. UPS records do not unambiguously resolve the question of whether the package ever arrived at Watertown. Parsons argues that, if the UPS and Kolatsky could not confirm the fact that the package arrived in Watertown, there could be no inference that Parsons stole the package from the Watertown facility.

Information in the UPS investigative report permits the conclusion that the package did arrive in Watertown. Specifically, the report indicates that the package was to be shipped to Watertown, that the Hartford UPS office had sent information regarding the package to Watertown, that Watertown UPS employees remembered a similar package, and that an attempted delivery from the Watertown facility was noted by telephone on

July 17, 1998. Although the shipping record is less complete than that which may be expected in the ordinary course of UPS business, Hines and Hardnock also indicated that they suspected Parsons of tampering with documents regarding the package. When viewed in light of Hines and Hardnock's suspicion of tampering, the evidence that the package did arrive in Watertown was sufficient to support the inference that the package did indeed arrive there. Because the inference that the package did arrive in Watertown was permissible, Kolatsky's statement that there was "confirmed arrival [of the package] in the Watertown OPS facility on 07/17/98" was not made with reckless disregard for the truth. See U.S. v. Campino, 890 F.2d 588, 592 (2d Cir. 1989) ("Franks does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.'") (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)); see also U.S. v. Trzaska, 111 F.3d 1019, 1027-28 (2d Cir. 1997) ("Every statement in a warrant affidavit does not have to be true. . . . However, if a defendant can make a sufficient showing that false statements were deliberately or recklessly included in a warrant affidavit, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant.").

Parsons's second criticism of the warrant application,

-11-

Kolatsky's omission of the fact that Parsons's age discrimination claim was directed to Hines, who had a substantial role in preparing the UPS investigative report, also does not permit an inference that Kolatsky recklessly disregarded the truth when he applied for an arrest warrant. Kolatsky stated the following in his application: "Parsons told this affiant that he DID NOT take the missing ring and he believes that his employment was terminated due to a[n] ongoing grievance he has with the company over being transferred out of the Watertown facility." (Dkt. # 28, Ex. D. ¶ 29). Parsons argues that Kolatsky should have stated that Parsons filed a grievance against UPS alleging age discrimination primarily based upon Hines' conduct, and that Parsons believed that Hines focused upon Parsons as a suspect for the theft of the package in retaliation for filing the age discrimination grievance.

Parsons contends that this potential retaliatory animus should not only have been more specifically disclosed in the warrant application, but also should have prompted Kolatsky to conduct a more detailed investigation. In support of his contention, Parsons cites a decision of the Court of Appeals for the Seventh Circuit, which states the following:

> Sometimes information from or about a person claiming to be the victim of crime would lead a reasonable officer to be suspicious, making further investigation prudent--and, because the "reasonableness" standard of the fourth amendment links the constitutional obligation to the standard of prudent conduct, the

-12-

officer must do more.

Hebron v. Touhy, 18 F.3d 421, 422-23 (7th Cir. 1994). In Hebron, the plaintiff property owner claimed that the police officers unreasonably credited the accusations of the property lessees, with whom the plaintiff had been embroiled in a dispute over rent. See id. at 423. The Court of Appeals affirmed the district court's grant of summary judgment in favor of the police officers, and held that the officers' independent investigation to verify the lessees' story was sufficient. See id.

Under the circumstances presented, Kolatsky satisfied his obligation to reaosnably investigate the UPS's complaint. Here, Kolatsky relied upon an official UPS investigation, conducted by Hines and Hardnock. Hines and Hardnock collected and presented witness statements, UPS documents, and other materials from their investigation. They also wrote a report setting forth their conclusions and the steps they took to investigate. Pat Carmody, a manager from another UPS office also participated in the investigation by reviewing the file and interviewing Parsons. Kolatsky personally met with Hines and Hardnock following the investigation, toured the Watertown UPS facility, and also met with Parsons. These factors gave Kolatsky a basis to evaluate the validity of the report and the reliability of the authors of the report. See Caldarola v. Calabrese, 298 F.3d 156, 166-67 (2d Cir. 2002) (holding that, when the police rely upon an

-13-

investigation conducted by a company or private firm, presenting the police officer with the basis for the conclusions reached in the private investigation strengthens the validity of the police investigation). Therefore, Kolatsky disclosed all that was required to be disclosed and satisfied his obligation to determine the reliability of the information provided to him by the UPS.

Parsons's third challenge to the warrant application concerns Kolatsky's reliance upon the six factors supporting the UPS' request for an arrest warrant listed on the first page of the UPS report. Parsons sets forth several arguments questioning the weight the factors should be assigned and provides a more detailed context for evaluating the weight of the factors. The corrections Parsons proposes are not material to the determination of probable cause. Although the points raised by Parsons are certainly relevant to Parsons's guilt or innocence, the detail Parsons seeks is well beyond that required under the circumstances facing Kolatsky. The six factors are conclusions that could logically be reached from the evidence accumulated in the UPS investigative file, and any additional details are not necessary to the determination of probable cause to arrest Parsons.

Parsons's challenges to Kolatsky's warrant application are unfounded because the inaccuracies and omissions are not material

to the determination of whether there was probable cause to arrest Parsons for theft of the package. As such, Parsons's claims against Kolatsky must fail as a matter of law. Because Parsons's claims against Luth and the City of Watertown are derivative of his claims against Kolatsky, his claims against these defendants must also fail.

### III.   CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (dkt. # 25), as renewed (dkt. # 45), is **GRANTED**. Judgment in favor of all defendants on all counts of the Amended Complaint shall enter forthwith. The Clerk of the Court shall close this file.

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of March, 2004.

/s/DJS
_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE